IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| MARY BASICH, | CASE NO. 5:11-cv-04406 EJD |
| Plaintiff(s), | **ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTION FOR SUMMARY JUDGMENT** |
| v. | |
| PATENAUDE & FELIX, APC., ET AL., | [Docket Item No(s). 142] |
| Defendant(s). | |

Plaintiff Mary Basich ("Plaintiff") initiated the instant action against Defendants Patenaude & Felix, APC and Capital One Bank (USA), N.A.[1] for debt collection activity arising from a credit card account that, it turns out, was not hers. Presently before the court is Defendants' Motion for Summary Judgment. See Docket Item No. 142. For the reasons explained below, the Motion will be granted in part and denied in part.

### I.  FACTUAL BACKGROUND

The facts of this case are a tale of two "Mary's." The first "Mary" is Plaintiff. She was born in Croatia in 1938 and has lived in Wastonville, California, for the past 53 years. See Decl. of David Humphries ("Humphries Decl."), Ex. 1., at 13:13-18, 108:20-24. Plaintiff's Social Security number begins with the number 5. Id., Ex. 1, at 14:2-3. She has been married to Antone George Basich since 1958. Id., Ex. 2, at 122:23-123:9.

---

[1] In this order, the court refers to Patenaude & Felix, APC as "P&F", to Capital One Bank (USA), N.A. as "Capital One," and to these defendants collectively as "Defendants."

United States District Court
For the Northern District of California

The second "Mary" is an individual named Mary Ryals ("Ryals"). Ryals was born in 1946 and has lived in Manteca, California, since 1980. Id., Ex. 3, at 10:24-11:16. Her Social Security number begins with the number 4, but the remaining seven numbers are identical to Plaintiff's Social Security number. Id., Ex. 3, at 15:4-5; see also Decl. of Raymond A. Patenaude ("Patenaude Decl."), at ¶ 6.

Ryals obtained a credit card from Capital One in 2002, but defaulted sometime prior to August 7, 2004. See Humphries Decl., Ex. 3, at 12:20-25; Ex. 6, at 89:23-90:2. On January 7, 2005, Capital One retained P&F to assist with collection efforts related to Ryals' overdue account. See Patenaude Decl., at ¶ 3. It is undisputed that Capital One provided P&F with Ryals' name, phone number in Manteca, address in Manteca, credit card number, the balance owing on the account, and the date the account was charged off.[2] Id. at ¶ 3. It is also undisputed that P&F was provided with Ryals' Social Security number (the one beginning with the number 4) at some point, or obtained that knowledge somehow, although exactly when the number became known to P&F cannot be determined from the evidence. Id. at ¶ 6; Humphries Decl., Ex. 6, at 40:10-18.

On January 10, 2005, Raymond Patenaude of P&F reviewed the account and sent through the mail a demand letter to Ryals at the Manteca address. See Humphries Decl., at Ex. 7, Ex. 5, at 87:4-19; see also Patenaude Decl., at Ex. P. The letter was not returned to P&F. See Patenaude Decl., at ¶ 34. That same day, Rebecca Thompson of P&F called Ryals at the telephone number in Manteca and left a voicemail message. See Patenaude Decl., at Ex. P. Thompson also researched Ryals on Lexis, a national skip-tracing database, and determined that Ryals was using the alias "Mary Ryals-Basich" and owned real property located on Beach Street in Watsonville. Id. at ¶ 3, Ex. P.

P&F was unable to reach Ryals or anyone else at the Manteca phone number, despite leaving voicemail messages. Id. Thus, between March 22, 2005, and April 18, 2005, Thompson reviewed the account and determined that a lawsuit should be filed. Id. at Ex. P. In claim notes kept by P&F in relation to the account, Thompson entered "FFT: REVIEWED ACCT: FORWARD FOR SUIT:DBTR1 OWNS PROPERTY" on March 22, 2005. Id.

---

[2] To "charge off" a debt is to treat it "as a loss or expense because payment is unlikely." Black's Law Dictionary 266 (9th ed. 2009).

Pursuant to Thompson's instruction, P&F filed a collection lawsuit against Ryals "a/k/a Mary Basich" in San Joaquin County Superior Court on May 31, 2005. Id. at ¶ 4, Ex. A. Ryals was personally served with the Summons and Complaint on July 17, 2005. Id. at ¶ 4, Ex. B. P&F eventually obtained a default judgment against Ryals on August 9, 2005. Id. at ¶ 4, Ex. C.

While the state lawsuit was pending, P&F continued to research Ryals. Id. at ¶ 5, Ex. P. On July 9, 2005, Anna Gorecki of P&F made multiple entries in the claim notes pursuant to information obtained from Lexis. Id. They state as follows, in pertinent part:

> FFT: PER LEXIS DTR IS NOW RESIDING AT: 1907 E. LAKE AVE WATSONVILLE, CA 95078.
>
> FFT: BASICH ANTONE G & MARY(TRUSTEES) (Trustee/Conservator) // Property Address: 345 E. BEACH ST #A
>
> FFT: Seller Mailing Address: 532 HAWES ST, MANTECA, CA 95336 // Sale Date: 5/23/2002
>
> FFT: MARY (Trustee/Conservator), Family Trust // Property Address: 1907 E LAKE AVE, WATSONVILLE, CA
>
> FFT: PER LEXIS: DTR HAS 3 PROPERTY NOW, Borrower(s): BASICH, ANTONE G (Trustor/Conservator)

Id. at Ex. P.

Gorecki also contacted Plaintiff by telephone in Watsonville on July 9, 2005. Id. at ¶ 6; Ex. P. Gorecki's claim notes indicate that the individual who answered identified herself as Plaintiff and stated that she was the "wrong party." Id. at Ex. P. The individual further stated that the last 4 digits of her Social Security number did not match the numbers provided by Gorecki. Id.

Gorecki conducted further research through Lexis on August 30, 2005. Id. at ¶ 7, Ex. P. The claim notes from that date indicate that Gorecki obtained the same information concerning Plaintiff and Ryals that she noted on July 9, 2005. Id. at Ex. P.

On September 22, 2005, Gorecki again attempted to contact Plaintiff by telephone. Id. at ¶ 8, Ex. P. The claim notes indicate that the individual who answered was unaware of an account with Capital One and refused to confirm her Social Security number. Id. at Ex. P. The claim notes further indicate that Gorecki spoke with the individual's husband, and then again with the individual who answered. Id. The individual eventually terminated the call after Gorecki told her that should

could not contact Capital One. Id. After this interaction, Susan Green from P&F made the following entry in the claim notes on September 22, 2005: "FFT: dbtr owns 2 properties ****345 E BEACH ST #A, WATSONVILLE, CA 95076 & 532 HAWES ST, MANTECA, CA." Id.

Green made another attempt to contact Plaintiff by telephone on September 23, 2005. Id. The claim notes indicate that Green spoke with Plaintiff, who stated she was not Ryals and would not verify her Social Security number. Id. Green eventually terminated the call. Id.

On October 6, 2005, Wade Miller of P&F made the following entry in the claim notes after conducting research on another skip-tracing database: "*****smartlinx: property owned: 1907 E LAKE AVE WATSONVILLE, CA 95076-2324 COUNTY: Santa Cruz." Id. Additional research through Lexis on November 22, 2005, resulted in an entry in the claim notes showing two addresses for Plaintiff and Ryals, one in Manteca and one in Watsonville, with nearly identical Social Security numbers for the two. Id. at ¶ 10; Ex. P. Only the first digit was noted as different. Id.

The claim notes indicate that Elisabeth Gooding from P&F received a telephone call on March 6, 2006, from Plaintiff's husband who stated that Plaintiff was not Ryals. Id. at Ex. P. Gooding viewed Lexis and wrote "dtr has both names." Id. She also made the following entry in the claim notes: "FFT: need to pull cbr ...... this may be the wrong person." Id. Gooding made a similar entry on March 13, 2006. Id.

Olen Mackey from P&F investigated further using Lexis and Trans Union on September 7, 2006. Id. at Ex. P. Pursuant to this investigation, Mackey wrote in the claim notes that Ryals was using Plaintiff's name and "Mary Serls" as an alias. Id. She also noted two addresses for Ryals, one in Watsonville and one in Manteca. Id. On December 16, 2006, Green updated the claim notes with the "newest address per lexis = 1907 E LAKE AVE WATSONVILLE, CA 95076-2324" and added a new telephone number. Id. Green also spoke to an unidentified female on December 26, 2006, and April 16, 2007, who told Green that she did not recognize the name given and was the "wrong Mary." Id. Green investigated further on April 16, 2007, using Qwest and Accurint and made the following entry in the claim notes: "FFT: per accurint dbtr current name = MARY BASICH . . . same as qwest." Id.

On June 7, 2007, Green received a call from an individual claiming to be Plaintiff's son. Id.

According to the claim notes from that date, Plaintiff's son told Green that his family did not know someone named Mary Ryals and that they never had an account with Capital One. Id. After this call, Green researched using Accurint and Trans Union, both of which confirmed information previously known to P&F. Id.

On August 13, 2007, Green received a call from an individual identified as Plaintiff, who told Green that she did not know the debtor, that she did not want to receive further calls or mailings, and that she would consider further contact harassment. Id.

After a period of sparse activity regarding the debt, Joseph Aranez of P&F investigated using Experian and entered the following in the claim notes on February 3, 2009: "Possible debtor alias: MARY RYALS." Id. The claim notes for this period also notes efforts by P&F to obtain a bank levy, which was sent to the sheriff for execution on March 12, 2009. Id.

On May 8, 2009, William Nelson of P&F received a telephone call from an individual claiming to be Plaintiff's son, George, who stated that he received the levy notice from Plaintiff. Id. George further stated that they levy was directed at the "wrong person." Id. Nelson apparently explained to George that "we need tons of proof" and George indicated he would call back. Id. He did so after Plaintiff left a voicemail message allowing P&F to speak with George, and informed Nelson that the Social Security number used by P&F was "off in the first 3" digits. Id.

On June 17, 2009, P&F obtained a credit report for Ryals from Trans Union, which showed that Ryals' current address was in Manteca, but listed an address on East Lake Avenue in Watsonville as her former address. Id. at Ex. P; Ex. R; see also Decl. of June D. Coleman ("Coleman Decl."), Docket Item No. 144, at 21:21-22:18. The credit report also listed bank accounts for Ryals at Wachovia. See Patenaude Decl. at Ex. R.

On December 4, 2009, Carl Hamlett at P&F received a telephone call from an individual identified as Plaintiff's son, who informed Hamlett that the Social Security number associated with the debtor was one number different than Plantiff's. Id. at Ex. P. In response, Hamlett obtained a credit report from Trans Union - this time inputting Plaintiff's Social Security number into the search terms - and obtained a credit report for Ryals. Id. at ¶ 20; Ex. P.; Ex. R. P&F staff also researched through Accurint, which again showed that Ryals had an address in Manteca and in

5
CASE NO. 5:11-cv-04406 EJD
ORDER GRANTING IN PART AND DENYING PART DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

Watsonville. Id. at ¶ 20. Thus, as they had before, P&F concluded that Ryals was using Plaintiff's name as an alias. Id. The claim notes indicate that Hamlett received an additional voicemail from Plaintiff's son on December 8, 2009. Id. at Ex. P.

Elieth Garcia at P&F received a telephone call on September 29, 2010, from an individual stating he had spoken to P&F before. Id. He also stated that P&F was pursuing the wrong person. Hamlett then received a telephone call from the Santa Cruz County Sheriff's Department on October 14, 2010. Id. According to the claim notes, Hamlett explained to the sheriff that information related to Ryals and Plaintiff was identical. Id.

On November 5, 2010, Hamlett conducted further research on Westlaw. Id. Hamlett noted in the claim notes that searches under the Social Security numbers of Ryals and Plaintiff resulted in a Watsonville address. Id.

Bill Atkinson from the Santa Cruz County District Attorney's Office called P&F on November 5, 2010, and spoke with Raymond Patenaude. Id. The claim notes indicate that Atkinson told Patenaude that Plaintiff was the "wrong lady" and that P&F was to "release [the] levy." Id. Patenaude asked Atkinson if something could be provided in writing. Id. at ¶ 24. On November 9, 2010, P&F received a letter from Plaintiff with an identity theft police report and other supporting information attached. Id. at ¶ 24; Ex. D. Patenaude directed that an apology letter be sent to Plaintiff that same day. Id. at ¶ 24. Patenaude also directed that the bank levy be released immediately. Id.

This lawsuit followed on September 2, 2011.

## II. LEGAL STANDARD

A motion for summary judgment should be granted if "there is no genuine dispute as to any material fact and the movant is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(a); Addisu v. Fred Meyer, Inc., 198 F.3d 1130, 1134 (9th Cir. 2000). The moving party bears the initial burden of informing the court of the basis for the motion and identifying the portions of the pleadings, depositions, answers to interrogatories, admissions, or affidavits that demonstrate the absence of a triable issue of material fact. Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986).

If the moving party meets this initial burden, the burden then shifts to the non-moving party to go beyond the pleadings and designate "specific facts showing that there is a genuine issue for trial." Fed. R. Civ. P. 56(e); Celotex, 477 U.S. at 324. The court must regard as true the opposing party's evidence, if supported by affidavits or other evidentiary material. Celotex, 477 U.S. at 324. However, the mere suggestion that facts are in controversy, as well as conclusory or speculative testimony in affidavits and moving papers, is not sufficient to defeat summary judgment. See Thornhill Publ'g Co. v. GTE Corp., 594 F.2d 730, 738 (9th Cir. 1979). Instead, the non-moving party must come forward with admissible evidence to satisfy the burden. Fed. R. Civ. P. 56(c); see also Hal Roach Studios, Inc. v. Feiner & Co., Inc., 896 F.2d 1542, 1550 (9th Cir. 1990).

A genuine issue for trial exists if the non-moving party presents evidence from which a reasonable jury, viewing the evidence in the light most favorable to that party, could resolve the material issue in his or her favor. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248-49 (1986); Barlow v. Ground, 943 F.2d 1132, 1134-36 (9th Cir. 1991). Conversely, summary judgment must be granted where a party "fails to make a showing sufficient to establish the existence of an element essential to that party's case, on which that party will bear the burden of proof at trial." Celotex, 477 U.S. at 322.

### III. DISCUSSION

Two initial matters must be addressed before proceeding to the merits of this motion.

First, Plaintiff has withdrawn a number of the claims originally asserted in the Complaint according to a notice filed on October 29, 2012. See Docket Item No. 179. That being the case, what remains are claims under certain sections of the Fair Debt Collection Practices Act ("FDCPA"), specifically 15 U.S.C. §§ 1692d, 1692e, and 1692f, and claims under § 1788.13 and § 1788.17 of California's Rosenthal Fair Debt Collection Practices Act ("RFDCPA"). The court's discussion will be limited accordingly.

Second, the pleadings for this motion reveal that the *material facts* - those that are listed above and supplemented within the discussion below - are not in dispute for the most part. This, of course, excludes those instances of commentary or argument disguised as a fact which seem to pervade some of the filings. See Thornhill Publ'g Co., 594 F.2d at 738; see also Anderson v.

Liberty Lobby, Inc., 477 U.S. 242, 248 (1986) (holding that on summary judgment, "factual disputes that are irrelevant or unnecessary will not be counted.").

With those initial observations in mind, the court now addresses the substantive issues.

**A.    Statute of Limitations**

The parties disagree on the effect of the statute of limitations. Claims under the FDCPA must be brought within "one year from the date on which the violation occurs." 15 U.S.C. § 1692k(d). So must claims under the RFDCPA. See Cal. Civ. Proc. Code § 1788.30(f) ("Any action under this section may be brought in any appropriate court of competent jurisdiction in an individual capacity only, within one year from the date of the occurrence of the violation.").

The undisputed facts show that only four contacts between Plaintiff or her family members and P&F occurred with thin the limitations period of September 2, 2010, through September 2, 2011. These contacts were: the telephone calls initiated by Plaintiff's son and Plaintiff on September 29, 2010, and October 13, 2010, respectively; the notice of levy provided to the sheriff on September 20, 2010, and executed on October 8, 2010; and the apology letter sent to Plaintiff on November 9, 2010. It appears, therefore, that these contacts constitute the only possible bases for liability under a strict application of the statute of limitations.

In order to escape this outcome, Plaintiff invokes the "continuing violation" doctrine. But the court is not persuaded that the doctrine applies to the facts presented here, which show a rather limited amount of contact and conduct over a period of five years. Indeed, it is only "[u]nder the appropriate circumstances . . . the continuing violation doctrine may apply to debt collection claims." Joseph v. J.J. Mac Intyre Cos., 281 F. Supp. 2d 1156, 1161 (N.D. Cal. 2003). "The key is whether the conduct complained of constitutes a continuing pattern and course of conduct as opposed to unrelated discrete acts." Id. An appropriate "continuing pattern" or "course of conduct," like those described in the cases cited by Plaintiff,[3] cannot be found based on these facts because

---

[3] In Cruz v. Int'l Collection Corp., No. C 08-991, 2008 U.S. Dist. LEXIS 55298, at *1-4, 2008 WL 2263800 (N.D. Cal. June 2, 2008), the collection activity consisted of several letters sent to the plaintiff from October, 2006, through February, 2007 - a period of less than one year. The facts examined in Komarova v. Nat'l Credit Acceptance, Inc., 175 Cal. App. 4th 324 (2009), involve a similar, rather abbreviated period of time over which all collection activity occurred.

8
CASE NO. 5:11-cv-04406 EJD
ORDER GRANTING IN PART AND DENYING PART DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

P&F's activities toward Plaintiff are more akin to discrete acts over an extended period of time.[4]

Accordingly, the court finds that Defendants' liability is limited by the one year statute of limitations applicable to claims under the FDCPA and the RFDCPA.

**B.　FDCPA**

The FDCPA seeks "to eliminate abusive debt collection practices by debt collectors, to insure that those debt collectors who refrain from using abusive debt collection practices are not competitively disadvantaged, and to promote consistent State action to protect consumers against debt collection abuses." 15 U.S.C. § 1692(e). "The FDCPA imposes strict liability on creditors, including liability for violations that are not knowing or intentional." McCollough v. Johnson, Rodenburg & Lauinger, LLC, 637 F.3d 939, 952 (9th Cir. 2011) (quotation omitted).

Under the FDCPA, a debt collector "may not engage in any conduct the natural consequence of which is to harass, oppress, or abuse any person in connection with the collection of a debt." 15 U.S.C. § 1692d. The FDCPA also prohibits the use of "any false, deceptive, or misleading representation or means in connection with the collection of any debt," including "[t]he false representation of . . . the character, amount, or legal status of any debt," "[t]he representation or implication that nonpayment of any debt will result in the arrest or imprisonment of any person or the seizure, garnishment, attachment, or sale of any property or wages of any person unless such action is lawful and the debt collector or creditor intends to take such action," "[t]he threat to take any action that cannot legally be taken or that is not intended to be taken," and "[t]he use of any false representation or deceptive means to collect or attempt to collect any debt or to obtain information concerning a consumer." 15 U.S.C. §§ 1692e(2), 1692e(4), 1692e(5) and 1692e(10). In addition, debt collectors must refrain from using "unfair or unconscionable means to collect or attempt to collect any debt." 15 U.S.C. § 1692f.

"[W]hether conduct violates §§ 1692e or 1692f requires an objective analysis that takes into account whether the least sophisticated debtor would likely be misled by a communication."

---

[4] At the same time, however, the court recognizes that conduct which occurred during the pre-limitations period may be admissible "to establish a foundation for other evidence." Joseph, 281 F. Supp. 2d at 1162.

9
CASE NO. 5:11-cv-04406 EJD
ORDER GRANTING IN PART AND DENYING PART DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

Donohue v. Quick Collect Inc., 592 F.3d 1027, 1030 (9th Cir. 2010) (quotation omitted). This standard also applies to alleged violations of § 1692d. Id. at 1033. In assessing FDCPA liability, a court is "not concerned with mere technical falsehoods that mislead no one, but instead with genuinely misleading statements that may frustrate a consumer's ability to intelligently choose his or her response." Id. at 1034.

### 1. 1692d

Defendants argue there is no issue of triable fact as to whether their conduct violated § 1692d due to the absence of telephonic or written communication in relation to actual debt collection during the one-year limitations period.

As to the isolated contacts which occurred from September 2, 2010, through September 2, 2011, there is no evidence to support a finding that Defendants' conduct was such that a "natural consequence" of it would have been harassment, oppression, or abuse. See 15 U.S.C. § 1692d. In fact, a review of the entire record from 2005 through 2010 compels the same conclusion because the evidence simply does not demonstrate that any of Defendants' conduct was designed to harass, oppress or abuse Plaintiff. In contrast, the evidence shows that Defendants' efforts to collect on the debt, although directed at the wrong person, were of an ordinary type, consisting of standard telephone calls and letters. As such, the court finds that Defendants have met their initial burden.

For her part, Plaintiff argues that P&F's operating policy, which she finds deficient in a number of aspects, constitutes a violation § 1692d. The court disagrees. While it is true that conduct covered by 1692d is not clearly defined, it is nonetheless clear that some "conduct fails to establish harassment as a matter of law." Artega v. Asset Acceptance, LLC, 733 F. Supp. 2d 1218, 1227 (E.D. Cal. 2010). A debt collector may be liable for "immediately re-calling a debtor after a debtor has hung up the telephone[,]" or for "continuing to call the debtor after the debtor has requested that the debt collector cease and desist communication[,]" or for "calling a debtor outside of his or her home - by calling the debtor's workplace or the homes of a debtor's family and friends - or calling at inconvenient hours[.]" Id. at 1227-28. But a debt collector's "single laugh" during a telephone conversation, a description of repayment as "urgent" and "time sensitive," and a statement that they "were going to get their money one way or another, yelling that Georgia was a garnishable

state, then hanging up," have each been found not to violation 1692d as a matter of law. Id. at 1228-29. Here, the type of collection activities designated by P&F's operating policy do not even approach the level of conduct found *not* to violate the statute. But more importantly, the evidence does not show that P&F's policy was implemented against Plaintiff as a means of harassment.

There is evidence to support Plaintiff's contention that P&F continued to place telephone calls to Plaintiff even after being told that she was not the debtor and after being told not to contact Plaintiff further. It is possible that this type of continued contact could, under certain circumstances, constitute a violation of § 1692d. But again, there is no evidence that P&F initiated any telephone calls during the limitations period. Moreover, the evidence does not demonstrate that either the character, content or the volume of the communications between P&F and Plaintiff would qualify as the type of conduct prohibited by the statute. See Lopez v. Prof'l Collection Consultants, No. CV 11-3214 PSG (PLAx), 2013 U.S. Dist. LEXIS 36612, at *7-8, 2013 WL 708701 (C.D. Cal. Feb. 26, 2013). In that regard, this case is distinguishable from Fox v. Citicorp Credit Servs., 15 F.3d 1507, 1516 (9th Cir. 1994) (holding that "[t]hreatening and intimidating calls to a consumer at an inconvenient time or place could rationally support a jury finding of harassing conduct" when plaintiff testified that debt collector made threats of garnishment, demanded overnight payment, and continued to call plaintiff at work after she requested not to be contacted at place of employment).

Accordingly, the court will grant Defendants' motion for summary judgment as to Plaintiff's claim under § 1692d.

### 2. 1692e and 1692f

For reasons similar to its argument under 1692d, Defendants contends there is no issue of triable fact as to whether their conduct violated subsections (2), (4), (5) and (10) of § 1692e and § 1692f. The court agrees with Defendants in part.

Again, there is a limited amount of conduct which falls within the limitations period. But Plaintiff has presented a triable issues of fact under §§ 1692e(2), 1692e(10) and 1692f within that conduct, in particular with respect the Notice of Levy served and executed upon in September and October, 2010. More specifically, the evidence shows that P&F continued its efforts to levy Plaintiff's bank account even after being told, on numerous occasions, that Plaintiff was not the

1  debtor.  Although Plaintiff was not herself confused by this activity since she maintained all along
2  that she did not owe the debt, it is possible that a "hypothetical 'least sophisticated debtor'" could
3  have been misled or deceived.  See Wade v. Regional Credit Ass'n, 87 F.3d 1098, 1100 (9th Cir.
4  1996).  The levy, therefore, could be found to contain a "false representation of . . . the character,
5  amount, or legal status of any debt," could be found to constitute "[t]he use of any false
6  representation or deceptive means to collect or attempt to collect any debt," or could be determined
7  an "unfair or unconscionable means to collect or attempt to collect any debt" since it is undisputed
8  that Plaintiff was not the debtor.  15 U.S.C. §§ 1692e(2), 1692e(10), 1692f.

This conclusion requires the court to address the possibility of a bona fide error defense.  The FDCPA "provides a narrow exception to strict liability . . . for bona fide errors."  Reichert v. Nat'l Credit Sys., Inc., 531 F.3d 1002, 1005 (9th Cir. 2008) (quotation omitted).  To that end:

> A debt collector may not be held liable in any action brought under this subchapter if the debt collector shows by a preponderance of evidence that the violation was not intentional and resulted from a bona fide error notwithstanding the maintenance of procedures reasonably adapted  to avoid any such error.

15 U.S.C. § 1692k(c).

"The bona fide error defense is an affirmative defense, for which the debt collector has the burden of proof.  The defense does not protect a debt collector whose reliance on a creditor's representation is unreasonable.  The defense requires the defendant to show that it maintains procedures to avoid errors."  Reichert, 531 F.3d at 1006 (citations omitted).

"A debt collector is not entitled under the [Act] to sit back and wait until a creditor makes a mistake and then institute procedures to prevent a recurrence. To qualify for the bona fide error defense under the [Act], the debt collector has an affirmative obligation to maintain procedures designed to avoid discoverable errors. . . . The procedures themselves must be explained, along with the manner in which they were adapted to avoid the error."  Id. at 1007.

Here, the court finds that Defendants' evidence is insufficient to satisfy the burden to show an absence of a genuine issue of material fact as to the bona fide error defense.  While P&F argues that it consulted "7 different sources" to consistently conclude that Ryals and Plaintiff were the same person, it provided only one declaration from Patenaude that vaguely describes the procedures in

place.[5] That is not enough on summary judgment, especially since Defendants' description of their own procedures does not explain how re-checking the same or similar databases is a procedure "adapted to avoid the error" of pursuing a non-debtor. As such, the bona fide error defense does not prevent a denial of Defendants' summary judgment motion as to §§ 1692e(2), 1692e(10) and 1692f.

However, the evidence plainly does not support a triable issue of fact as to §§ 1692e(4) or 1692(5) based on the conduct those particular subsections are meant to prohibit. Accordingly, the court will deny Defendants' motion for summary judgment as to §§ 1692e(2), 1692e(10) and 1692f, but will grant the motion as to §§ 1692e(4) or 1692(5).[6]

### B. RFDCPA

"California has adopted a state version of the FDCPA, called the Rosenthal Act." Riggs v. Prober & Raphael, 681 F.3d 1097, 1100 (9th Cir. 2012); see also Cal. Civ.Code § 1788 et seq. "The Rosenthal Act mimics or incorporates by reference the FDCPA's requirements . . . and makes available the FDCPA's remedies for violations." Riggs, 681 F.3d at 1100. "[W]hether [conduct] violates the Rosenthal Act turns on whether it violates the FDCPA." Id. Thus, "[t]he Rosenthal Act establishes liability under California law for violations of the FDCPA." Sial v. Unifund CCR Partners, No. 08 CV 0905 JM (CAB), 2008 U.S. Dist. LEXIS 66666, at *4, 2008 WL 4079281 (S.D. Cal. Aug. 28, 2008). Moreover, "[t]he Rosenthal Act's remedies are cumulative, and available even when the FDCPA affords relief." Gonzalez v. Arrow Fin. Servs., LLC, 660 F.3d 1055, 1068 (9th Cir. 2011).

Because there exists triable factual issues under the FDCPA, the court also finds that a triable issue exists under § 1788.17 - the section of the RFDCPA which incorporates violations of the federal law. Defendants' motion for summary judgment will therefore be denied as to that statute.

---

[5] "[P&F] committed an inadvertent mistake by attempting to collect monies from Plaintiff . . . despite reasonable procedures to ensure the person being subject to collection efforts and was the debtor. These procedures included various investigations throughout the five years of collection efforts and the use of different sources to verify the identity of the debtor and any aliases, as well as the contact information for the debtor." See Patenaude Decl., at ¶ 33.

[6] Plaintiff apparently maintains a general claim under 15 U.S.C. § 1692e, but such a claim would be encompassed under the more specific subsections.

However, other than arguing the co-existent nature of the FDCPA and the RFDCPA, Plaintiff did not cite to any evidence which would support liability under §§ 1788.13(e) or 1788.13(j). Accordingly, Defendants' motion will be granted as to those statutes.

### C. Vicarious Liability

Plaintiff argues that Capital One should be held vicariously liable under the RFDCPA for the specific acts undertaken by P&F in attempting to collect the debt.

On this issue, the court finds persuasive the district court's reasoning in Macros v. Moore Law Group, A.P.C., No. C-11-2406 MMC, 2012 U.S. Dist. LEXIS 17211, 2012 WL 359710 (N.D. Cal. Feb. 2, 2012). The Moore court recognized that while one can be held vicariously liable for the acts of its agent in California, a plaintiff seeking to impose vicarious liability must show that the person for whom the work is performed has the right to control the activities of the agent. Moore, 2012 U.S. Dist. LEXIS, at *21 (citing Garcia v. W & W Community Development, Inc., 186 Cal. App. 4th 1038, 1049 (2010); Fenton v. Freedman, 748 F.2d 1358, 1361-62 (9th Cir. 1984)). The Moore court then concluded that the plaintiff in the case before it alleged "no facts to support a finding that Citibank, having entered into an agreement with Moore under which Moore would attempt to collect a debt assertedly owed by Makreas to Citibank, had the right to control the activities of Moore." Id. at *22.

Such is also the case here. Plaintiff has not presented any evidence to suggest that Capital One, in contracting with P&F to collect debts on its behalf, had the right to control P&F's debt collection activities. That being the case, the court finds an absence of triable fact on this issue. Accordingly, Defendant's motion for summary judgment will be granted as to Capital One's vicarious liability, a result which excludes Capital One as a defendant in this action.

### IV. ORDER

Based on the foregoing, Defendant's Motion for Summary Judgment (Docket Item No. 142) is GRANTED IN PART and DENIED IN PART.

The motion is GRANTED as to Plaintiff's claims under 15 U.S.C. §§ 1692d, 1692e(4), 1692e(5) and California Civil Code §§ 1788.13(e) and 1788.13(j). The motion is DENIED as to Plaintiff's claims under 15 U.S.C. §§ 1692e(2), 1692e(10), 1692f and California Civil Code §

1788.17.

The motion is also GRANTED as to Plaintiff's claims of vicarious liability. Capital One is TERMINATED as a defendant to this action.

**IT IS SO ORDERED.**

Dated: April 24, 2013

EDWARD J. DAVILA
United States District Judge

CASE NO. 5:11-cv-04406 EJD
ORDER GRANTING IN PART AND DENYING PART DEFENDANTS' MOTION FOR SUMMARY JUDGMENT